(164 App. Div. 421)

SMITH et al. v. NEW YORK CENT. & H. R. R. CO.  (two cases).

(Supreme Court, Appellate Division, Second Department.  November 13, 1914.)

1. RAILROADS (§ 482*)—FIRES—ACTIONS—SUFFICIENCY OF EVIDENCE.
In an action for the value of a barn and its contents, destroyed by fire, evidence *held* to make a question for the jury as to whether the fire was caused by sparks from a railroad locomotive, and to support a jury finding that it was so caused.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1730–1732, 1734–1736;  Dec. Dig. § 482.*]

2. RAILROADS (§ 479*)—FIRES—ACTIONS—PLEADING—EVIDENCE ADMISSIBLE UNDER PLEADING—"CUPOLA."
In an action against a railroad company for the value of a barn and its contents, destroyed by fire, a complaint charging defendant with permitting hot coals, cinders, and fire to come out from a locomotive and drop upon the roof of a barn was sufficient to admit evidence that sparks went through openings in a cupola on the barn, as a "cupola" is defined as a "hemispherical roof," and may be deemed a part of the roof, and hence the objection to such evidence, and a motion for a continuance on the ground of surprise, were properly overruled.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1706–1708;  Dec. Dig. § 479.*

For other definitions, see Words and Phrases, Second Series, Cupola.]

3. RAILROADS (§ 484*)—FIRES—ACTIONS—QUESTIONS FOR JURY.
In an action for the value of a barn and its contents, destroyed by fire, the failure to produce cinders in court in support of the testimony of witnesses as to seeing large-sized sparks escaping from a railway locomotive was not conclusive against the possibility of the fire being so started, but left the question one for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746;  Dec. Dig. § 484.*]

4. RAILROADS (§ 482*)—FIRES—ACTIONS—WEIGHT OF EVIDENCE.
In an action for the destruction of a barn and its contents by fire, testimony that the spark arrester on a railroad locomotive, when examined two days after the fire, was found in good order, was not decisive that the fire was not caused by sparks discharged from the locomotive because the arrester was insufficient or defective, as against the testimony of witnesses that they saw a large volume of sparks emitted from such locomotive, some of which were as large as a walnut, in the absence of clear evidence that nothing had been done in the meantime to change the netting of the spark arrester.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1730–1732, 1734–1736;  Dec. Dig. § 482.*]

5. RAILROADS (§ 484*)—FIRES—ACTIONS—QUESTIONS FOR JURY.
In an action against a railroad company for the destruction of a barn and its contents by fire, in which defendant's evidence tended to show that a locomotive had a spark arrester with a one-fourth inch mesh, where there was evidence that another railroad used a mesh of one-eighth of an inch, and that the mesh was ordinarily from one-eighth to one-fourth of an inch, the court properly left it to the jury to determine whether the spark arrester was of proper type and design.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746;  Dec. Dig. § 484.*]

Thomas, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Dutchess County.

Two actions, one by J. Henry Smith and others and the other by Carrie G. Smith and another, against the New York Central & Hudson River Railroad Company. From judgments on verdicts in favor of plaintiffs, and from orders denying a new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE- TON, and PUTNAM, JJ.

Robert Wilkinson, of Poughkeepsie, for appellant.
Walter Farrington, of Poughkeepsie, for respondents.

PUTNAM, J. [1] These judgments were for damages by the burning of a barn and its contents near the tracks of the Harlem division of the defendant's railroad at Dover, in Dutchess county. The upper part of this barn of three stories was nearly filled with hay. The structure was 96 feet long and 66 feet wide, and about 50 feet in height, surmounted by two cupolas about 12 feet from either end. The barn was a distance stated from 110 to 125 feet west of defendant's tracks. It had an opening in the roof for the operation of the hayfork; also slats in the cupolas left a space through which sparks could enter. A train bound to the north at this locality has quite a heavy grade, and also to round a curve. On the night in question, the Pittsfield Express, a train of five or six cars, passed just after dark, and in running up this grade a large volume of sparks was emitted, which rose as high as the top of the barn and were observed by several witnesses as of a size stated to be as large as a walnut. As to the wind, the evidence was conflicting; some witnesses testified it was from the eastward and towards this barn. Soon after the train passed, fire broke out about the cupola at the eastern end of the barn. Whether the sparks from defendant's locomotive caused this fire was a question of fact. An affirmative verdict upon that special issue is well sustained by the fire breaking out so soon after the engine had been seen emitting many sparks, and the appearance of these flames on the roof and the cupola before any part of the lower stories of the structure, with the absence of any other cause to which the fire could be attributed.

[2] The complaint charged defendant with permitting hot "coals, cinders, and fire to come out from said locomotive and train and drop upon the roof and roofs of said barns and buildings." This was sufficient to cover evidence that the sparks came through the cupola, which may be deemed a part of the roof, since architecturally a cupola is defined by the Standard Dictionary as a "hemispherical roof." Defendant's objection and motion for a continuance on the ground of surprise at this testimony regarding the cupola were properly overruled.

[3] Appellant's counsel urged that the statements as to large-sized sparks were not confirmed by the production of any cinders in court. This, however, was a matter for the jury, who naturally took account of the manner that the escaping sparks were noted and observed, and doubtless allowed for the visual appearance of such shining objects at night. There is nothing contrary to known facts in such sparks passing over this distance, and rising as high as 50 feet, and landing still

alive, so as to set fire to hay or like inflammable substance.  Goss, Locomotive Sparks (N. Y. 1902) c. 6.

[4] The defendant's evidence tended to show that this locomotive had a spark arrester like defendant's other engines, of the pattern of one-fourth inch mesh, with three wires to the inch.  The defendant's engineer and fireman say that on the night in question they observed nothing unusual as to the fore part of the locomotive and the spark arrester.  On an inspection two days after the fire, it was testified that the spark arrester was found in good order; and a photograph of its mesh, as it then appeared, regular and unbroken, was admitted in evidence.  Plaintiffs urged that the size and volume of the escaping sparks indicated that this spark catcher was not screened to a mesh of even one-fourth of an inch, or that, if so screened, it was in improper condition, perhaps with holes, to allow the passage of sparks of the size and volume observed.  An inspection taken two days after the accident is not decisive, without clear evidence that in the meantime nothing had been done to change the netting.  Here the evidence was as to the state of the spark arrester, not at the time the fire occurred, but two days later, and cannot overcome the word of many witnesses, who saw sparks escaping from this locomotive "of such size and in such quantities as might properly sustain the inference that it was out of order." White v. N. Y. C. & H. R. R. R. Co., 90 App. Div. 356, 85 N. Y. Supp. 497; Peck v. N. Y. C. & H. R. R. R. Co., 165 N. Y. 347, 59 N. E. 206. On a steep grade, some emission of sparks may be necessary; but the size and volume of the sparks here testified to raised an issue for the jury.

[5] The court left to the jury whether the spark arrester was of the standard type and pattern as ordinarily used.  But a separate question, as formulated for a special verdict, was whether the sparks that caused the fire were discharged from defendant's locomotive because its arrester was insufficient or defective.  The court rightly declined to tell the jury that the "uncontradicted proof" is that the spark arrester was of "the proper type and design," since one witness had testified that the Central Railroad of New England used a finer mesh of one-eighth inch, and that ordinarily the mesh was from one-eighth to one-fourth of an inch.  The jury, and not the court, is to say what was a "proper" design.  Such a netting or screen for sparks has to be often inspected, to guard against holes breaking through.  In the absence of testimony as to its actual condition on the night of this fire, the jury's inference of negligence is not opposed by such a preponderance of testimony in behalf of defendant as would justify setting aside this verdict as against the weight of evidence.

I advise that the judgments and orders be affirmed, with costs:

JENKS, P. J., and CARR and STAPLETON, JJ., concur.

THOMAS, J., dissents, for error of the trial court in charging that the jury could consider that the equipment was not of a standard type. It was of the construction in general use on important railroads, and plaintiffs' witness testified that the usual dimensions were from one-eighth to one-quarter inch mesh, although his experience and knowledge were some six years distant from the date of trial.